UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE
OF MICHIGAN, et al.,

                Plaintiffs,                        Case No. 16-cv-10317

v.                                            Honorable Thomas L. Ludington

BLUE CROSS BLUE SHIELD OF MICHIGAN,

                Defendant.

_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS, DISMISSING COUNTS I & III-IX OF AMENDED COMPLAINT WITH PREJUDICE**

The Saginaw Chippewa Indian Tribe of Michigan and its Employee Welfare Plan (collectively, "Plaintiff" or "Tribe") has sued Blue Cross Blue Shield of Michigan ("BCBSM") over the manner in which BCBSM has administered Plaintiff's "self-insured employee benefit Plan" and the health-benefit portions of that Plan. Plaintiff has brought a nine count complaint alleging that BCBSM breached its fiduciary duty to Plaintiff under the Employee Retirement Income Security Act ("ERISA") when it did not authorize payment of Medicare-like Rates ("MLRs") for certain health services (Count I), that BCBSM engaged in prohibited transactions under ERISA when it charged Plaintiff hidden fees (Count II), and seven state law claims (Count III-IX).

BCBSM has moved to dismiss Plaintiff's claims that it violated its fiduciary duty to Plaintiff by not paying MLRs for certain health services procured by Plan members. It has also moved to dismiss Plaintiff's state law claims.

**I.**

Plaintiff Tribe "is a federally recognized Indian tribe, pursuant to 25 U.S.C. [§] 1300k, with its Tribal Government headquarters in Mt. Pleasant, Michigan." Am. Compl. ¶ 3, ECF No. 7. The Tribe "has created an ERISA-governed benefit plan." *Id*. at ¶ 7. Defendant BCBSM is "a Michigan non-profit health care corporation organized under the Nonprofit Health Care Corporation Reform Act, MCL 550.1101" and was retained by Plaintiff to administer its ERISA benefit plan. *Id*. at ¶ 8.

**A.**

Plaintiff and BCBSM entered into Administrative Service Contracts which set out the terms of the parties' relationship. Under the Contracts, "BCBSM agreed to administer the Plan by paying covered employee health care claims on behalf of the Plan, using money provided to it by [the Tribe]." *Id*. at ¶ 20. When a claim was filed by a Plan participant, BCBSM would process the claim and remit payment. The Tribe would then reimburse BCBSM for the amounts billed in relation to the participant's claim. *Id*. at ¶ 21. Some portion of the payments made by BCBSM came from pre-paid funds that the Tribe furnished to BCBSM on the basis of the estimated cost of services for the upcoming quarter. *Id*. at ¶ 27. The pre-paid funds were Plan assets.

**B.**

BCBSM charged Plaintiff an administrative fee for administering the Plan. Beginning in 1994, BCBSM attempted to obtain increased administrative fees by burying "hidden fees . . . in marked-up hospital claims." *Id*. at ¶ 44. BCBSM would bill plan sponsors for a greater charge than what BCBSM had paid the health-care provider for actual services rendered. The difference between the two charges was retained by BCBSM as a hidden administrative fee. *Id*. at ¶ 47–48. BCBSM then began hiding other fees in this same manner.

BCBSM's practice of hiding fees is not at issue in BCBSM's motion to dismiss.

**C.**

On July 5, 2007, the Department of Health and Human Services implemented regulations governing the payment amounts that health-care providers may accept from Indians for medical services rendered. 42 C.F.R. § 136.30. The regulations cap the amount a hospital or health-care provider may accept at the same rate that would be paid under Medicare for the same service. From the time the regulation was enacted, BCBSM did not ensure that it processed claims for payment at the MLR for the applicable service. Thus, BCBSM often paid healthcare providers rates for services that were in excess of what would otherwise have been paid under Medicaid.

**II.**

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**III.**

BCBSM has moved to dismiss two of Plaintiff's claims. First, BCBSM seeks to have dismissed any claim made by Plaintiff that BCBSM had a fiduciary duty to ensure that Plaintiff paid "Medicare Like Rates" ("MLR") for certain health services. Second, BCBSM seeks to have all of Plaintiff's state law claims dismissed as being entirely preempted by ERISA.

**A.**

BCBSM moves to dismiss Plaintiff's claims that BCBSM breached its fiduciary duty to Plaintiff by not paying MLRs for certain health services undergone by members of the Tribe. Plaintiff's predicates its MLR claim on 42 C.F.R. § 136.30(a). The regulation provides:

> All Medicare-participating hospitals . . . and critical access hospitals . . . that furnish inpatient services must accept no more than the rates of payment under the methodology described in this section as payment in full for all items and services authorized by IHS, Tribal, and urban Indian organization entities . . . .

42 C.F.R. § 136.30(a). The regulations go on to explain, albeit fairly complexly, that the "rates of payment" are equivalent to the prevailing Medicare rate for the service in question. Plaintiff argues that BCBSM did not, pursuant to this regulatory requirement, pay MLRs to healthcare providers used by Tribe members. Rather, BCBSM paid higher rates. Paying higher rates was unreasonable of BCBSM, reasons Plaintiff, and thus a breach of BCBSM's fiduciary duty to Plaintiff.

ERISA prescribes when a person or entity is a fiduciary and the duties fiduciaries must exercise with respect to a plan. ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA requires fiduciaries to exercise a standard of care consistent with that of a "prudent man." Specifically, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). In addition to this basic duty, a fiduciary "shall discharge his duties":

> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>>
>> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

**1.**

Defendant argues that Plaintiff does not state a claim because nowhere in the plan it administers, or in ERISA is there a requirement that it ensure it authorizes payment for medical services at no more than the prevailing Medicare rate. BCBSM cites to numerous cases detailing the solicitude owed to the specific statutory prescriptions of ERISA, and the hesitancy of federal courts to impose any obligations that fall outside of ERISA's text.

Plaintiff concedes that nothing specifically in ERISA or the plan speaks directly to the requirement it seeks to impose on BCBSM. It claims, however, that the MLR regulations may have significant and material effects on the rates paid by its plan members, so BCBSM had a duty to be aware of those effects:

> As the fiduciary administering the Tribe's self-insured Plan, it was BCBSM's job to determine, on behalf of the Tribe, whether or not a particular health care claim should be paid by Plaintiffs and, if so, how much should be paid to the provider for the medical service rendered. It was BCBSM who directed Plaintiffs to pay standard contract rates for medical claims that were eligible for lower Medicare-Like Rate discounts.
>
> BCBSM was required to make its decisions about whether to direct Plaintiffs to pay a health care claim, and how much to direct Plaintiffs to pay, with the best interests of the Plaintiffs in mind and in a manner that preserved Plan assets. BCBSM was also required make [sic] its decisions about whether to direct Plaintiffs to pay a health care claim, and how much to direct Plaintiffs to pay, with the care, skill, prudence, and diligence of a prudent person.

Pl.'s Resp. Br. 19, ECF No. 18.

This argument is problematic. First, Plaintiff does not rely on any legal authority for the claim that ensuring MLRs are paid forms a part of BCBSM's fiduciary duty. In fact, courts have uniformly held that an ERISA fiduciary does not owe a duty to the plan to comply with obligations extrinsic to the text of ERISA and the plan. In *Clark v. Feder Semo & Bard, P.C.*, 739 F.3d 28, 30 (D.C. Cir. 2014), the District of Columbia Circuit held that an ERISA fiduciary did not have a duty to comply with tax laws governing discriminatory plan distributions. The plaintiff in *Clark* sued the plan administrator of her law firm's retirement plan. When the law firm that employed the plaintiff ceased operating, the plan administrator distributed the retirement plan funds to the firm's employees. The firm's founder received a particularly large distribution. The plaintiff claimed that the distribution violated a provision of the Internal Revenue Code ("IRC") that "prohibits payments that favor highly compensated employees." *Clark*, 739 F.3d at 29.

The section of the IRC that the plaintiff in *Clark* alleged the distribution violated said nothing about the administration of ERISA-qualifying plans, plan administrators, or fiduciary duties. The IRC provision in question only stated that a qualified pension plan must not "discriminate in favor of highly compensated employees." 26 U.S.C. § 401(a)(4). Nevertheless,

- 6 -

the plaintiff in *Clark* contended that the administrator of the firm's retirement plan had a

fiduciary duty to avoid discriminatory distributions that run afoul of 26 U.S.C. § 401(a)(4). The

plaintiff grounded her claim in § 404 of ERISA (29 U.S.C. § 1104). *Clark v. Feder Semo &

Bard, P.C., et al.*, Case No. 07-00470, 2d Am. Compl. ¶¶ 33-39, ECF No. 28.

Relying on the decisions of other Circuits, the D.C. Circuit held that § 401(a)(4) of the

IRC did not impose a fiduciary duty on the plan administrator under ERISA. The *Clark* court

explained that the provisions of ERISA describing fiduciary duties "use unequivocal language to

describe the duties of plan fiduciaries." *Clark*, 739 F.3d at 30 (citing to § 1104 of ERISA).

Because ERISA does not explicitly impose upon fiduciaries a duty to avoid discriminatory

distributions at the conclusion of a pension plan, the plan administrator in *Clark* had no such

duty.

Plaintiff attempts to distinguish *Clark*. It argues that *Clark* is inapposite because the

plaintiff did not allege that the plan administrator breached its fiduciary duties under ERISA

when it authorized the distributions that violated § 401(a)(4) of the IRC. Plaintiff is mistaken.

That is the exact way in which the plaintiff in *Clark* sought to impose liability on the plan

administrator.

In fact, the plaintiff in Clark had a more compelling argument for liability than Plaintiff's

here. The IRC provision at issue in *Clark* is specifically invoked by ERISA in 29 U.S.C. §

1344(b)(5). That section of ERISA provides:

> If the Secretary of the Treasury determines that the allocation made pursuant to
> this section (without regard to this paragraph) results in discrimination prohibited
> by section 401(a)(4) of Title 26 then, if required to prevent the disqualification of
> the plan (or any trust under the plan) under section 401(a) or 403(a) of Title 26,
> the assets allocated under subsections (a)(4)(B), (a)(5), and (a)(6) of this section
> shall be reallocated to the extent necessary to avoid such discrimination.

*Id.* Despite this specific reference in the text of ERISA, fiduciaries have no duty to avoid distributions in violation of § 401 of the IRC. The *Clark* court determined that this was so because § 1344 of ERISA does not speak to ERISA fiduciaries, but instead speaks to the Secretary of the Treasury. As noted above, the *Clark* court cited ERISA's very specific provisions concerning the duties of a plan fiduciary and noted that if Congress intended to impose a duty on an ERISA fiduciary, it would have done so with similar specificity.

Here, ERISA makes no reference to the MLR regulations. Likewise, the MLR regulations make no reference to ERISA. The *Clark* court, citing to analogous decisions from the Seventh and Tenth Circuits, resisted the invitation to expand ERISA to impose duties on fiduciaries not outlined in ERISA's text. *Clark*, 739 F.3d at 29 (citing *Reklau v. Merchants Nat. Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) (rejecting claim of direct plan administrator liability under § 401 of the IRC) and *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233, 1238 (10th Cir. 1999) (same)). The Tenth Circuit explained this resistance in terms applicable to Plaintiff's assertions: "we believe it would be improper to read into ERISA a requirement Congress elected to apply only to the Tax Code." *Stamper*, 188 F.3d at 1239. It would be equally improper to effect this result with the MLR regulations.

**2.**

The only authority relied upon by Plaintiff deserves mention because it is a decision of this Court. In *Little River Band of Ottawa Indians, et al. v. Blue Cross Blue Shield of Michigan*, Case No. 15-13708, Op. & Order ECF No. 24 (E.D. Mich. May 10, 2016), this Court held that the plaintiff, an Indian tribe whose employee welfare plan was administered by BCBSM, stated a claim that BCBSM breached its fiduciary duty by not paying MLRs to healthcare providers.

*Little River Band* is appropriately distinguishable. In *Little River Band*, BCBSM did not directly challenge the legal theory under which the Little River Band brought its MLR claim. Instead, BCBSM challenged the ability of the Little River Band to plead a factual claim that BCBSM did not pay MLRs:

> The defendant contends that the allegations are insufficient to make that claim because the plaintiffs did not allege that in all instances a laundry list of specific statutory and regulatory conditions for capping payments to providers at such rates were satisfied. The defendant's position is that the complaint does not adequately plead satisfaction of all conditions precedent to its putative obligation to cap plan payments at rates no higher than those paid by Medicare.

*Little River Band*, Case No. 15-13708, ECF No. 25 at 11. Judge David M. Lawson, the judge presiding over the case, concluded that at the motion to dismiss stage, the Little River Band sufficiently pled facts, taken as true, to support its assertion that some of its members were entitled to pay MLRs and that BCBSM used plan assets to pay amounts in excess of those MLRs.

Here, BCBSM's argument for dismissal is wholly different. BCBSM argues now that Plaintiff's claim is insufficient as a matter of law, not that it is insufficiently pled on the facts. Accordingly, *Little River Band* is of no help to Plaintiff.

Because Plaintiff cannot establish that BCBSM had a fiduciary duty under ERISA to ensure payment of MLRs for healthcare services obtained by eligible plan participants, Plaintiff's MLR claims will be dismissed.

## B.

BCBSM has also moved to dismiss Plaintiff's state law claims. BCBSM argues that those claims are completely preempted by ERISA. Plaintiff does not contest this point. Its state law claims will be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendant Blue Cross Blue Shield of Michigan's Motion to Dismiss, ECF No. 14, is **GRANTED.**

It is further **ORDERED** that Counts I & III-IX of Plaintiff's Amended Complaint, ECF No. 7, are **DISMISSED with prejudice**.

It is further **ORDERED** that Count II of Plaintiff's Amended Complaint, ECF No. 7, is **DISMISSED with prejudice** to the extent it alleges any claims related to Defendant BCBSM's obligation to ensure the Plan paid Medicare-like Rates for healthcare claims.

Dated: August 3, 2016                                 s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

<div style="border:1px solid">

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 3, 2016.

                        s/Michael A. Sian
                        MICHAEL A. SIAN, Case Manager

</div>