UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE
OF MICHIGAN, el al.,

                 Plaintiff,                 Case No. 16-cv-10317

v.                                                  Honorable Thomas L. Ludington

BLUE CROSS BLUE SHIELD OF MICHIGAN,

                 Defendant.
_____/

**ORDER OVERRULING OBJECTIONS AND DENYING MOTION TO STRIKE EXPERT OPINION**

On January 29, 2016, Plaintiffs Saginaw Chippewa Indian Tribe of Michigan and the Welfare Benefit Plan ("Plaintiffs") brought suit against Blue Cross Blue Shield of Michigan ("BCBSM"). Plaintiffs' suit takes issue with BCBSM's management of Plaintiffs' "self-insured employee benefit Plan." Am. Compl. at 1, ECF No. 7. The remaining Counts involve hidden fees which BCBSM allegedly charged Plaintiffs. *See* ECF No. 22. Plaintiffs contend that "BCBSM's liability for the Hidden Fees is a foregone conclusion." Pl. Objs. at 3, ECF No. 69. To support that assertion, Plaintiffs rely upon *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, where the Sixth Circuit held that the district court properly entered judgment for *Hi-Lex* on a similar theory. 751 F.3d 740 (6th Cir. 2014). Regardless of whether *Hi-Lex* is determinative of BCBSM's liability, the current dispute is centered on the parties' ongoing dispute over the appropriate prejudgment interest rate. Although prejudgment interest will become relevant only if Plaintiffs prevail upon their hidden fees claim, the issue arises now because Plaintiffs are seeking discovery related to prejudgment interest.

From January 26, 2017, to March 1, 2017, six motions to compel and a motion for a protective order were filed. ECF Nos. 37, 39, 41, 45, 47, 58, 63. All seven motions were referred to Magistrate Judge Patricia T. Morris. On March 2, 2017, she held a hearing and, the next day, issued an order resolving the referred motions "[f]or the reasons stated on the record." ECF No. 65. On March 17, 2017, Plaintiffs filed objections, ECF No. 69, to Judge Morris's denial of their motion to compel discovery related to the rate of return on BCBSM's investments, ECF No. 39. A week later, BCBSM filed a motion to strike the prejudgment interest rate analysis of Plaintiff's expert, Neil Steinkamp. ECF No. 72. For the reasons stated below, the objections will be overruled and the motion to strike will be denied.

I.

For purposes of the objections and motion to strike, the details of Plaintiffs' alleged injuries are not relevant.[1] It is sufficient to note that Plaintiffs are alleging that BCBSM has breached its fiduciary duties under the Employee Retirement Income Security Act (ERISA) by charging hidden fees and that successful ERISA plaintiffs may recover prejudgment interest, in the district court's discretion. In the event Plaintiffs succeed on the merits of their claims, they intend to seek prejudgment interest at a rate based on BCBSM's actual rate of return on investments.

To enable a calculation of that rate of return, Plaintiffs filed a motion to compel discovery related to the financial rate of return that BCBSM earned on the access fees. Mot. Compel. Disc. Rate, ECF No. 39. In the motion, Plaintiffs conceded that "BCBSM comingled the money taken from Plaintiffs with other monies, which makes it impossible to 'trace' Plaintiff's precise funds." *Id.* at 4. But they contend that "[i]nsurance industry standards and legal presumptions provide for

---

[1] The allegations in Plaintiffs' Complaint were summarized in the Court's August 3, 2016, Opinion and Order. ECF No. 22.

this scenario and conclude that: BCBSM would have invested its excess capital into more-risky investments than its typical reserves." *Id.* (emphasis omitted). Thus, Plaintiffs reasoned, the "stolen money" would have been used "in the most beneficial way possible." *Id.* at 6. BCBSM asserted that, because the funds were commingled, discovery should be limited to "Plaintiffs' 'overall' rate of return on all of BCBSM's investments." *Id.* (emphasis omitted). Plaintiffs requested that "BCBSM should be ordered to produce documents relating to the rates of return that BCSBM earned on <u>specific</u> investments." *Id.* (emphasis in original).

In the written order that followed the hearing on the motion to compel, Judge Morris denied Plaintiffs' request to compel discovery related to the rate of return on specific investments. The denial was based on "the reasons stated on the record" and Judge Morris's prior analysis in other access fee cases. ECF No. 65 at 2. Judge Morris's most detailed treatment of the request for discovery related to rate of return came in *Stone Transport Holding Inc., et al, v. Blue Cross & Blue Shield of Michigan*, Case No. 1:14-cv-13407. In that case, Judge Morris denied the plaintiff's motion to compel discovery on the rate of return BCBSM earned on specific investments. ECF No. 30.

In the *Stone Transport* order, Judge Morris concluded that "at least some of the information sought is relevant and that discovery is not premature," despite the fact that liability had not yet been conclusively established. Order Deny Mot. Compel at 9, ECF No. 30. She further reasoned that "[t]he fact that misappropriated funds are commingled with others in accounts is not enough alone to preclude equitable relief if tracing is possible." *Id.* at 28. However, Judge Morris emphasized that "if there were truly no way to see how Blue Cross's alleged breach led to increased profits, then Plaintiff[']s request would resemble the proverbial fishing expedition." *Id.* at 32. In other words, if the tracing of assets would be purely

"speculative," a "lengthy and fruitless tramp through Blue Cross's archives" would be unjustified. *Id.* at 36. Ultimately, Judge Morris ordered BCBSM to produce "general information on its investments from the account," but denied the plaintiff's request to compel disclosure of information regarding individual investments. *Id.* at 39.

## II.

Federal Rule of Civil Procedure 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

*Id.*

Unless the reviewing court "is left with the definite and firm conviction that a mistake has been committed" or concludes that the order "contradicts or ignores applicable precepts of law," the magistrate judge's order should stand. *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985); *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (internal citations omitted).

## III.

The crux of Plaintiffs' objections is that Judge Morris's decision has incorrectly limited the scope of discovery, which will have the effect of preventing "this Court from exercising its full discretion regarding the appropriate prejudgment interest rate." Objs. at 1, ECF No. 69. Plaintiffs contend that this narrowing of discovery will effectively prevent the Plaintiffs from providing the Court with specific information regarding BCBSM's *actual* rate of return on the access fees. Plaintiffs further argue that Judge Morris incorrectly applied the law related to the

scope of discovery. They assert that Judge Morris conceded that the information sought was relevant and that BCBSM should not be shielded from a means of discovery simply because the method was unusual. Given those conclusions, Plaintiffs assert that Judge Morris's refusal to allow discovery on the rate of return for specific investments was error. Finally, Plaintiffs argue that Judge Morris's decision improperly decided a substantive trial issue because trial courts must determine which rate of return is most appropriate and the discovery order will prevent Plaintiffs from "fully supporting their arguments." Given the deferential standard of review, none of these objections have merit.

### A.

Plaintiffs first cite several previous decisions from this District for the proposition that, absent information on BCBSM's actual rate of return, the Court will be forced to guess at the appropriate prejudgment interest rate. Objs. at 9–10 (citing *Schleben v. Carpenters Pension Trust Fund-Detroit & Vicinity*, No. 14-cv-11564, 2016 WL 806707 (E.D. Mich. Mar. 2, 2016); *Rochow v. Life Ins. Co. of N. Am.*, No. 04-73628, 2016 WL 5476240 (E.D. Mich. Sept. 29, 2016)). The purpose of prejudgment interest is to compensate the plaintiff, not to impose punitive damages. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 376 (6th Cir. 2015). For that reason, prejudgment interest at the actual rate of return may be preferable to prejudgment interest based on an estimated rate of return. Prejudgment interest should not be awarded based on an estimated rate of return if doing so would leave the defendant with a windfall. Thus, if calculable, information regarding the actual rate of return which BCBSM earned on the access fees is relevant and helpful. As reflected in Judge Morris's order in *Stone Transport*, she agrees. *See Stone Transport* Order Deny. Mot. Comp. at 9, ECF No. 30 ("[T]he Court must decide if Plaintiffs can obtain discovery on one potential method: the profit rate Defendant actually

realized using the hidden fees. . . . The Court finds that at least some of the information sought is relevant and that discovery is not premature."). Thus, to the extent Plaintiffs assert that a prejudgment interest rate based on BCBSM's actual rate of return might be preferable to an estimated rate, they do not identify an error in Judge Morris's decision.

**B.**

Plaintiffs further argue that, given Judge Morris's finding that the information had relevance, she erred in refusing to allow discovery into the rate of return on specific investments. That conclusion was not clearly erroneous or contrary to law.

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.*

As Plaintiffs assert, Judge Morris did find in *Stone Transport* that the requested information was potentially relevant. However, she refused to order BCBSM to disclose the information, notwithstanding its relevance, because the lack of a traceable connection between specific investments and the access fees meant that allowing the broad discovery Plaintiffs sought was unwarranted. Because the rate of return on specific investments was not traceable to the access fee funds, the expense of the proposed discovery outweighed the likely benefit of the information.

Every court to rule on this issue has reached similar conclusions. *See Stone Transport Holding Inc., et al, v. Blue Cross & Blue Shield of Michigan*, Case No. 1:14-cv-13407; *Dykema Excavators, Inc. v. Blue Cross & Blue Shield of Michigan*, No. CV 13-12151, 2014 WL

12617764, at *2 (E.D. Mich. Nov. 14, 2014) ("Plaintiffs have not shown that the disputed fees were allocated to any particular investment(s) beyond the initial deposit account, and Plaintiffs are not entitled, for the purpose of determining a pre-judgment interest rate that might apply if they prevail, to the broad access into Defendant's financial portfolio they seek."); *DCS Industries, Inc., v. Blue Cross Blue Shield of Michigan*, No. 1:15-cv-13324, ECF No. 32; *Euclid Industries, Inc. et al v. Blue Cross Blue Shield of Michigan*, No. 1:15-cv-13875; *Renosol Corp. v. Blue Cross Blue Shield of Michigan*, No. 1:15-cv-14385, ECF No. 46.

Plaintiffs do not now argue that Judge Morris erred in concluding that the requested information on the rate of return for specific investments was not traceable to the access fee funds. Likewise, Plaintiffs do not identify any case where the court allowed the discovery Plaintiffs seek. Plaintiffs make much of the fact that district courts may award prejudgment interest, in their discretion, in accordance with general equitable principles. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000). That is true, but the fact that the Court has the discretionary power to award prejudgment interest on a variety of different theories does not entitle Plaintiffs to conduct expansive discovery in an attempt to substantiate a theory which is, at best, highly speculative. Plaintiffs have not provided to Judge Morris or this Court any affirmative evidence that they will be able to link BCBSM's actual rate of return on their investments as a whole to the misappropriated funds. Plaintiffs are free to advance any theory for calculating prejudgment interest they wish at trial, but that freedom does not translate into a license to conduct an unfettered investigation into every investment BCBSM made during the

relevant time period.[2] Judge Morris's reasonable limitation of the scope of discovery was neither clearly erroneous nor contrary to law.

**IV.**

On March 23, 2017, BCBSM filed a motion to strike the prejudgment interest rate analysis promulgated by Plaintiffs' expert, Neil Steinkamp. ECF No. 72. BCBSM asserts that Steinkamp's analysis is contrary to Federal Rule of Evidence 702. For the reasons stated below, the motion to strike Steinkamp's expert opinion will be denied.

Steinkamp's analysis represents an attempt by Plaintiffs to estimate BCBSM's rate of return on the access fee funds despite the absence of information regarding specific investments. In his report, he theorizes that, because the access fees were "excess funds," they would have been used to invest in higher-risk ventures. Steinkamp offers the "expected long-term rate of return" for BCBSM's pension plan assets as a reasonable example of the return BCBSM would have earned on the access fee funds. *See* Steinkamp Rep. at ¶ 92–99, ECF No. 72, Ex. A. He notes that, from 2002-2015, BCBSM's expected long-term rate of return (as described in its audited financial statements) ranged between 7.3% and 9.5%. *Id.* Steinkamp also provides the expected long-term rate of return for "comparable health insurance providers." *Id.* He indicates that the expected long-term rate of return in the industry ranged from 6.8% to 8.8%. *Id.* Steinkamp further explains that, for 2013–2015, the actual rate of return on long-term investments which similar defined benefits plans received ranged from 6.99% to 7.19%. Ultimately, Steinkamp utilizes interest rates from 9.5% to 7.3% to calculate the prejudgment interest rate. He asserts that the total interest in the access fees from March 2002 to March 3, 2017, is $15,294,671. *Id.* at ¶ 108. Steinkamp calculates the total interest on the fees collected for

---

[2] Plaintiffs argue that Judge Morris's decision "improperly decided a substantive trial issue." Objs. at 12. While the appropriate prejudgment interest rate is a decision for the district court to make at trial, discovery related to trial issues can properly be cabined by a magistrate judge.

the Physician Group Incentive Program (which Plaintiffs challenge as being substantially similar to the access fees) at $1,364,062 for the time period of January 2005 to March 3, 2017. *Id.* at 109.

**A.**

According to Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court must consider proffered expert testimony by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). Thus, proffered expert testimony is admissible only if it is reliable and relevant. *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000). However, mere disagreement among experts is not enough to establish unreliability. *See KB Partners I, L.P. v. Barbier*, No. A-11-CA-1034-SS, 2013 WL 2443217, at *7 n.7 (W.D. Tex. June 4, 2013). When the evidence is "shaky but admissible," the appropriate means of attacking expert testimony is through "[v]igorous cross-examination [and] presentation of contrary evidence." *Daubert*, 509 U.S. at 596.

The *Daubert* decision directs district courts to "act as 'gatekeepers' to protect juries from misleading or unreliable expert testimony." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 851 (6th Cir. 2004). In the context of a bench trial, the "gatekeeper" doctrine is "largely irrelevant." *Id.* at 852.

**B.**

BCBSM makes two arguments, neither of which justify striking Steinkamp's expert opinion. First, BCBSM argues that Steinkamp's analysis is contrary to law. Second, BCBSM argues that Steinkamp's analysis is entirely speculative.

**1.**

BCBSM argues that Steinkamp's analysis is contrary to law because the interest rate he proposes is higher than the interest rate rejected by the district court in *Hi-Lex*. Simply put, *Hi-Lex* does not stand for the proposition BCBSM is attributing to it. In *Hi-Lex*, the district court rejected a prejudgment interest rate proposed by Steinkamp, finding that it would overcompensate Hi-Lex for its loss. 751 F.3d at 751. Instead, the district court awarded prejudgment interest in accordance with 28 U.S.C. § 1961(a). That statutory provision sets forth the following means of calculating the prejudgment interest rate: "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* The district court utilized a "blended rate" which recalculated the statutory rate for "each of the 17 years during which the Disputed Fees were charged." 751 F.3d at 751–52. The Sixth Circuit affirmed that prejudgment interest rate: "[b]ecause the district court avoided a mechanical application of § 1961, it did not abuse its discretion in calculating the prejudgment interest award." *Id.*

BCBSM argues that, because the district court in *Hi-Lex* ruled that a prejudgment interest rate between 6.06% and 8.63% would overcompensate Hi-Lex, Plaintiffs are barred from seeking a higher interest rate. But the Sixth Circuit merely held that the district court's reasoning was not an abuse of discretion. The *Hi*-Lex decision cannot be reasonably interpreted as imposing an affirmative requirement on district courts to impose equivalent rates or utilize the same method of calculation in future cases.

As BCBSM acknowledges, district courts have discretion regarding the imposition of a prejudgment interest rate. *Rybarczyk*, 235 F.3d at 985. In some instances, courts have calculated prejudgment interest under § 1961. *Id.* In other cases, courts have awarded "prejudgment interest that [was] tied to prevailing market rates." *Id.* And in *Rybarczyk*, the Sixth Circuit approved the use of "the interest rate actually realized by [TRW] on the relevant funds." *Id.* at 986. In *Hi-Lex*, the Sixth Circuit held that utilizing a blended rate based on § 1961 to calculate the prejudgment interest rate was not an abuse of discretion. That case potentially provides a model for calculating the prejudgment interest rate, but the Court has discretion to consider and use other methods of calculating the interest rate. As such, Steinkamp's analysis, which provides such an alternative, is not contrary to law.

**2.**

BCBSM also argues that Steinkamp's analysis is entirely speculative. As BCBSM asserts, experts may not engage in baseless speculation. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (citing *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir.2000)). However, "Rule 702 . . . does not require anything approaching absolute certainty." *Id.*

BCBSM contends that Steinkamp's analysis is pure speculation because he relies on "'actuarial assumptions'" to estimate a "'purely theoretical'" rate of return which is untethered to the actual return BCBSM received on its investments. Mot. Strike at 9, ECF No. 72 (citing the rebuttal opinion of defense expert Rodney Crawford). BCBSM argues that Steinkamp's analysis is flawed because it "ignores the fact that BCBSM's pension plans 'are completely separate legal entities with different objectives, constraints, and risk tolerances.'" *Id.* at 10. In addition, BCBSM argues that Steinkamp improperly ignores the "various statutory restrictions impacting BCBSM's investment choices" as well as "BCBSM's *actual* investment returns." *Id.*

Those arguments might be effective rebuttals of the reasoning in Steinkamp's report, but they fall short of establishing that his analysis is unduly speculative as a matter of law. To be sure, the nature of Steinkamp's calculation involves estimation based, in part, upon BCBSM's financial statements. But that is not reason to strike the opinion, especially in a non-jury trial case. Steinkamp's analysis is speculative because the access fee funds have been commingled with BCBSM's other revenue. For that reason, it is impossible to determine the exact rate of return BCBSM received on the access fee funds. Any prejudgment interest rate calculation will therefore involve a certain level of approximation. BCBSM seems to argue, via its expert, that the most accurate calculation will look to either the statutory rate in § 1961 or the actual rate of return for BCBSM's investments overall. Plaintiffs argue, via Steinkamp, that the expected long-term rate of return should be applied.

The appropriate means of calculating the prejudgment interest rate will be determined at trial, if one is held. In its motion to strike, BCBSM advances arguments which are properly construed as reasons to choose its preferred method of calculation over Steinkamp's method of calculation. The Court may not ultimately adopt Steinkamp's analysis, but his approach is not

inherently unreliable. BCBSM may contest Steinkamp's analysis at trial via cross-examination and rebuttal testimony. Because any unreliability in Steinkamp's analysis can be adequately challenged at trial, the motion to strike will be denied.

**V.**

Accordingly, it is **ORDERED** that Plaintiffs' Objections to Judge Morris's Order Denying the Motion to Compel, ECF No. 69, are **OVERRULED.**

It is further **ORDERED** that Plaintiffs' Motion to Compel Discovery Related to the Rate of Return, ECF No. 39, is **DENIED.**

It is further **ORDERED** that Defendant's Motion to Strike, ECF No. 72, is **DENIED.**

Dated: May 16, 2017    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 16, 2017.

s/Kelly Winslow
Case Manager