# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  August 30, 2018

Mr. Phillip J. DeRosier
Dickinson Wright, 500 Woodward Avenue
Suite 4000
Detroit, MI 48226

Ms. Tacy Fletcher Flint
Ms. Abigail Behr Molitor
Mr. Constantine L. Trela Jr.
Sidley Austin
One S. Dearborn Street
Chicago, IL 60603

Mr. Aaron M. Phelps
Mr. Perrin Rynders
Mr. Bryan R. Walters
Varnum
P.O. Box 352
Grand Rapids, MI 49501

Re:  Case No. 17-1932, *Saginaw Chippewa Indian Tribe, et al v. Blue Cross Blue Shield of MI*
Originating Case No. : 1:16-cv-10317

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  18a0451n.06

No. 17-1932

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN; WELFARE BENEFIT PLAN, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) | |
| Defendant-Appellee. | ) | |

**FILED**
Aug 30, 2018
DEBORAH S. HUNT, Clerk

BEFORE:     BOGGS, BATCHELDER, and THAPAR, Circuit Judges.

BOGGS, Circuit Judge.  This case is one of many brought in recent years against Blue Cross Blue Shield of Michigan ("BCBSM") contending that BCBSM breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by charging its self-insured customers hidden administrative fees.  In *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740 (6th Cir. 2014), we affirmed the district court's ruling after a bench trial that BCBSM violated its fiduciary obligations under ERISA by marking up Hi-Lex's hospital claims with hidden administrative surcharges.  *Id.* at 742.

In the instant case, the Saginaw Chippewa Indian Tribe of Michigan ("the Tribe") alleged that BCBSM similarly inflated the Tribe's medical bills with undisclosed administrative fees.  Had that been all that the Tribe alleged, this would be a relatively simple case.  But the Tribe also contended that BCBSM breached its fiduciary duties under ERISA by failing to take advantage of

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

federal regulations that permit Indian Tribes to pay reduced rates for services provided by Medicare-participating hospitals.  The Tribe further claimed that BCBSM charged it hidden fees as part of the company's Physician Group Incentive Program ("PGIP")—a program and fees that were not at issue in *Hi-Lex*.  Complicating matters more is that the Tribe maintained two self-insured policies with BCBSM—one for tribal members and another for tribal employees.

Although the Tribe prevailed in part on its hidden-fees claim below, it appeals several adverse rulings by the district court.  The district court ruled that ERISA did not apply to the policy that covered only tribal members. The court also concluded that BCBSM did not breach any fiduciary duties owed to the Tribe under ERISA through its operation of PGIP or by its failure to pay less for services provided by Medicare-participating hospitals.  The Tribe appeals each of these rulings as well as the district court's supposed failure to award the Tribe prejudgment interest on the hidden-fees claim on which it was successful below.

For the reasons set forth below, we affirm the district court's judgment in part and reverse in part.

# I

## FACTUAL BACKGROUND

### *The Tribe's Two Group Policies with BCBSM*

The Tribe is a federally recognized Indian Tribe that owns and operates a casino and several other commercial enterprises and employs both tribal members and individuals who are not members of the Tribe.  The Tribe maintains two separate health-insurance group policies through BCBSM.  When the Tribe first purchased health-insurance coverage for its employees from BCBSM in the 1990s, the policy was fully insured, meaning that the Tribe paid a premium to BCBSM for coverage, and BCBSM was responsible for paying participants' medical claims.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

     In 2002, the Tribe began offering health-insurance coverage to tribal members. The Tribe also purchased this coverage through BCBSM, but this policy ("Member Policy"), unlike the fully insured policy for the Tribe's employees ("Employee Policy"), was self-funded. Under this arrangement, the Tribe paid the cost of healthcare benefits for covered individuals out of its own pocket and paid BCBSM a fee for administering the policy. The Tribe and BCBSM entered into an Administrative Services Contract ("ASC") for the Member Policy. Two years later, the Tribe executed a second ASC with BCBSM to transition the Employee Policy from being fully insured to self-funded.

     From 2004 through all times relevant to this case, the Tribe offered self-funded health-insurance coverage to tribal employees and tribal members through these two policies with BCBSM. The two policies had distinct eligibility requirements and offered coverage to different groups of people. The Member Policy was available only to tribal members—spouses and dependents who were not themselves tribal members could not participate in that policy. The Employee Policy, by contrast, covered tribal employees as well as spouses and dependents of employees, regardless of their tribal membership status. Although many tribal employees received coverage through the Member Policy, they made up only a small percentage of participants in that group policy: for all relevant years, more than 90% of Member Policy participants were *not* tribal employees. The Tribe also funded the two policies from different sources. The Member Policy was originally funded by the Tribe's Government Trust, which pays for governmental programs and benefits that the Tribe provides to tribal members. It currently is funded by the Tribe's Gaming Trust. The Employee Policy, by contrast, is funded by the Tribe's Fringe Trust, which pays for benefits provided to the employees of the Tribe.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

### The Physician Group Incentive Program

As a large-scale purchaser of healthcare services, BCBSM creates networks of approved medical providers with whom it negotiates compensation arrangements. Each year, BCBSM reviews the fees that in-network physicians receive and issues an update to the fee schedule that governs the financial arrangements that it has with the providers in its network. Prior to 2005, the fee update applied to all physicians equally, regardless of the health outcomes that they achieved. That changed in 2005 when BCBSM created PGIP, which required physicians to meet specified goals related to quality and efficiency, such as increasing the use of generic medications and reducing unnecessary procedures, to be awarded a portion of the fee update.

Under PGIP, physicians in the BCBSM network agreed to allocate a fixed percentage of the updated compensation amount to be paid to them to a pooled fund, the money in which is then re-distributed to physicians based on their individual success in meeting these performance objectives. When PGIP began in 2005, physicians contributed .5% of the payment they were entitled to under the updated fee schedule to the fund. That amount has increased over the years and is now 5%.

### Medicare-Like Rates

In July 2007, the Department of Health and Human Services implemented federal regulations that govern the payment amounts that Medicare-participating hospitals are permitted to accept for services provided to members of an Indian Tribe that carries out a Contract Health Service program on behalf of the Indian Health Service. *See* 42 C.F.R. § 136.30. The regulations provide that such a hospital must accept payment at a Medicare-like rate ("MLR"), that is, at a rate that is no more than what would be paid under Medicare for the same service. *Id.*

-4-

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

## PROCEDURAL HISTORY

The Tribe filed this action in January 2016, alleging violations of ERISA and Michigan law. The Tribe requested prejudgment interest as part of its damages. BCBSM moved to dismiss the state-law claims as preempted by ERISA. The Tribe agreed that ERISA preempted its state-law claims, and the district court dismissed those claims. BCBSM also moved to dismiss the Tribe's claim related to BCBSM's alleged failure to pay Medicare-Like Rates. The district court granted BCBSM's motion, holding that BCBSM did not owe the Tribe a fiduciary duty under ERISA to ensure payment of MLRs.

BCBSM and the Tribe proceeded to discovery on the Tribe's remaining ERISA claims about PGIP, the Member Policy, and the Employee Policy, and the parties later filed cross-motions for partial summary judgment. The Tribe sought to prove that the Employee Policy and the Member Policy jointly constituted a single ERISA plan. The district court disagreed, holding that the Tribe had two distinct healthcare plans and that ERISA governed only the Employee Policy. The court also held that BCBSM's operation of PGIP did not violate ERISA. The court therefore dismissed the Tribe's claims to the extent that they related to PGIP or payment of hidden fees for the Member Policy.

BCBSM did not contest the Tribe's claim concerning the payment of hidden fees for the Employee Policy, however, and the district court granted summary judgment to the Tribe on that claim, awarding it roughly $8.4 million. The Tribe did not ask for prejudgment interest in its motion for partial summary judgment, and the district court did not award the Tribe interest as part of its damages. The Tribe now appeals.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

## II

## THE MEMBER POLICY AND THE EMPLOYEE POLICY

On appeal, the Tribe first asserts that the district court erred in concluding that the Employee Policy and Member Policy are separate health-insurance plans, rather than two benefit options offered to employees under a single ERISA plan. The Tribe next contends that the court erred in ruling that ERISA does not cover the Member Policy.

### *Standard of Review*

We review the district court's grant of summary judgment de novo. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### *Analysis*

### One Plan or Two Plans?

The Tribe first contends that the Employee Policy and Member Policy constitute a single ERISA plan. The Tribe bears the burden of establishing that the policies collectively form such a plan. *See Daft v. Advest, Inc.*, 658 F.3d 583, 590–91 (6th Cir. 2011) (holding that the existence of an ERISA plan is an element of a plaintiff's claim). The Tribe's primary argument that it meets this burden contains two main premises: (1) that its Employee Policy is an ERISA plan and (2) that it is presumed that all benefits offered by an employer are part of one ERISA plan. The Tribe's argument falters at the second step because the presumption that the Tribe identifies is not applicable to this case.

In *Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598 (6th Cir. 2007), we considered whether the various coverage options offered by an employer constituted one ERISA plan with multiple benefit options or several ERISA distinct plans. *Id.* at 604. In determining this

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

issue, we acknowledged the "default rule that all medical benefits offered by an employer are generally considered to be part of one ERISA health plan." *Id.* at 605. Under this default rule, a plaintiff is entitled to the "presumption that the employee health benefits offered by an employer constitute a single ERISA plan." *Id.* at 606.

Despite the Tribe's arguments to the contrary, this default rule and the presumption that it entails do not apply to this case. They apply only when an employer offers the benefits at issue to its employees in its capacity as an employer, or, in other words, as part of the employment relationship in which it stands with its employees. *See id.* at 604–06. Although the *Loren* court did not make this condition explicit, it had no need to do so because it was clear that it was met in that case and that the benefits offered all fell under ERISA. *See id.* at 604 ("[T]here is no doubt about whether there is an ERISA plan. The question is how many."). The same cannot be said here since the Tribe provided coverage under the Member Policy only to tribal members. Although numerous tribal employees received coverage through this plan, they did so solely because of their status as members, rather than as employees, of the Tribe. The Tribe has brought forth no evidence to suggest that they received these benefits because of their employment relationship with the Tribe.

The Tribe also argues that administrative regulations support its claim that it had a single ERISA plan. *See* 26 C.F.R. § 54.4980B-2.A-6(a); Notice of Proposed Rulemaking for Health Coverage Portability, 69 Fed. Reg. 78800-01 (proposed Dec. 30, 2004) (to be codified at C.F.R. pt. 2590). These regulations are no help to the Tribe, however, because they establish a default rule and presumption similar to *Loren*'s: when an *employer* provides health care benefits to its *employees*, it is presumed that the various benefits offered constitute a single ERISA plan. But the

-7-

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

Tribe was not acting in this capacity when it offered tribal members, some of whom also happened to employees, benefits under the Member Policy.

Accordingly, the Tribe must carry its burden of establishing that it has a single ERISA plan without the benefit of any presumption that the Member Policy and Employee Policy jointly constitute one plan. It cannot do so. Whether the two policies form one plan or two separate plans is determined by the Tribe's intent in creating the policies. *See Loren*, 505 F.3d at 605; *Boos v. AT&T, Inc.*, 643 F.3d 127, 132 (5th Cir. 2011) ("Whether a benefit plan is a single plan or multiple plans is determined by employer intent."). We have not identified a controlling test to use when determining an employer's intent, but *Loren* suggested that at least three factors may be relevant: "(1) whether each plan had a different ERISA identification number; (2) whether the language of the plan documents indicated that the employer intended to establish multiple plans; and (3) whether the plans shared the same administrator or trust." 505 F.3d at 605 (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996)). Although the third factor favors the Tribe because BCBSM administered both policies, the first two factors do not because the Tribe never filed any formal ERISA plan documents, such as a Form 5500,[1] and therefore neither policy had an ERISA identification number or any plan documents that contained language indicating whether the Tribe intended to create more than one plan. We do not mean to suggest that an employer must comply with ERISA's formal requirements, such as filing plan documents, to establish one or more ERISA plans. That is certainly not the case. *See Int'l Res., Inc. v. N.Y. Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991). But since the first two *Loren* factors presuppose such compliance, it would be quite odd if an employer could draw support from them when it failed to observe the relevant formalities.

---

[1] "A Form 5500 is an annual disclosure document, which most large employers that offer employee benefits plans are required to submit as part of ERISA's overall reporting and disclosure framework." *Loren*, 505 F.3d at 606 n.2.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

Considering the policies as a whole, we are not convinced that the Tribe had any intention of creating a single plan for its employees. It does not appear that the Tribe intended to offer coverage under the Member Policy as one of two benefits options for employees, since the only employees who received coverage under that policy did so because of their status as members of the Tribe, not because they worked for the Tribe. That the two policies are funded from different sources, with the money for the Employee Policy coming from a trust that pays for employee benefits and the funding for the Member Policy initially originating in a trust that provides benefits to tribal members, also supports our conclusion that the policies were not intended to be two types of benefits offered to employees under a single plan. *See Boos*, 643 F.3d at 132. In short, the Tribe appears to have intended to create two plans—one for members and another for employees.[2]

Our conclusion that the two policies represent two plans rather than a single plan does not rest on any improper "unbundling" of the Tribe's benefits plans, as the Tribe insists. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000). The cases that the Tribe cites for this principle are inapposite, since they all concern one of two situations, neither of which is present here. One set of cases stands for the proposition that when deciding whether ERISA applies to an employer's benefits programs, courts should not carve out pieces of those programs and consider them apart from one another; they should be considered as a collective. *See Gross v. Sun Life Assurance Co. of Can.*, 734 F.3d 1, 7–8 (1st Cir. 2013); *Postma*, 223 F.3d at 538; *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 407–08 (9th Cir. 1995). The other line of cases makes clear that a single plan may be created even when that plan covers two or more classes of employees who are subject to distinct eligibility requirements or when it contains different benefits structures

---

[2] This last observation explains why our decision, contrary to the Tribe's contention, does not undermine ERISA's goal of ensuring that a single benefit plan will not be subject to overlapping, non-uniform regulatory regimes. *See Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 390 (6th Cir. 2009). That policy concern is not implicated here because the Tribe has created two plans, only one of which, as we explain below, is an ERISA plan.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

for employees.  *See Boos*, 643 F.3d at 131–33; *Steiner v. Fortis Benefits Ins. Co.*, No. 97-0265, 2000 U.S. Dist. LEXIS 9366, at *3 (E.D. La. June 30, 2000).  These two sets of cases appear to reflect the same general principle that the *Loren* court recognized and that we have found to be inapplicable here: "all medical benefits offered by an employer are generally considered to be part of one ERISA health plan."  505 F.3d at 605.  But the cases are distinguishable even despite that observation, since the Member Policy and Employee Policy do not merely cover two different groups of employees.  Nor is participation in the policies conditioned on different eligibility criteria for employees; rather, an individual's eligibility for coverage under the Member Policy turns on factors that are entirely independent of any employment relationship that she may have with the Tribe.

### Is the Member Policy an ERISA plan?

The Tribe next argues that ERISA governs the Member Policy even if that policy is considered a separate plan.

> This court uses a three-part test for determining whether a plan is covered by ERISA.
>
> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA.  Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits."  Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434–35 (6th Cir. 1996) (alteration and internal citations omitted).  The Employee Policy, as both parties agree, passes the test for being an ERISA plan, but the Member Policy does not.

The stumbling block for the Tribe is that it did not establish or maintain the Member Policy with the intent of providing benefits to its employees.  As we have already noted, the employment

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

status of the individuals who received coverage under this policy was irrelevant, since coverage depended entirely on whether an individual was a member of the Tribe. The policy therefore appears to have been created to provide a benefit to the Tribe's members, not to its employees.

The Tribe's argument that ERISA applies to the Member Policy rests on two claims: (1) the Member Policy included some participants who were employees of the Tribe and (2) the policy's non-employee participants are the types of individuals whose participation in the plan does not place it outside of ERISA. The Tribe's argument is faulty because it ignores the threshold requirement that ERISA covers a plan only when an employer established or maintained it to provide benefits to at least some of its employees.[3] *See Thompson*, 95 F.3d at 438. An employer can meet this requirement only when it offers the benefits to the employees as part of the employment relationship. *See Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263–64 (11th Cir. 2004). That was not the case here since the employees' participation in the Member Policy was unrelated to their employment status with the Tribe.

## MEDICARE-LIKE RATES

The Tribe next argues that the district court erred in dismissing its claim relating to Medicare-Like Rates for failure to state a claim. We agree.

### *Standard of Review*

We examine de novo a district court's grant of a motion to dismiss for failure to state a claim. *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[3] The authorities that the Tribe cites for support are inapposite because this threshold condition is satisfied in each of them. *See* 29 C.F.R. § 2510.3-3(b); *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 775 (6th Cir. 2001); *Peterson*, 48 F.3d at 407–08; *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 447–48 (4th Cir. 1993); *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991).

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In reviewing a complaint, we construe it 'in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

### Analysis

The Tribe's appeal requires us to consider the scope of a plan administrator's fiduciary duties under ERISA. Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA requires three duties of fiduciaries:

> (1) the duty of loyalty, which requires "all decisions regarding an ERISA plan . . . be made with an eye single to the interests of the participants and beneficiaries"; (2) the "prudent person fiduciary obligation," which requires a plan fiduciary to act with the "care, skill, prudence, and diligence of a prudent person acting under similar circumstances," and (3) the exclusive benefit rule, which requires a fiduciary to "act for the exclusive purpose of providing benefits to plan participants."

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 867 (6th Cir. 2013) (omission in original) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002)).

The Tribe bases its MLR claim on 42 C.F.R. § 136.30, which requires Medicare-participating hospitals to accept payment for services at a rate that is no more than what those services would cost under Medicare, provided that the services are authorized by a Tribe that is

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

carrying out a Contract Health Service ("CHS") program on behalf of the Indian Health Service ("IHS"). *Id.* at § 136.30(a), (b). The Tribe alleges that although BCBSM was aware of these regulations, BCBSM always directed the Tribe to pay standard contract rates for health services, even when these services were eligible for a Medicare-like rate. Since the standard rate for these services typically is higher than what would be paid under Medicare, the Tribe contends that it has stated a claim that BCBSM squandered plan assets,[4] and thereby breached its duties under ERISA to act prudently and with the best interests of the Tribe in mind when administering the plan.

We agree. Failing to preserve plan assets can be actionable under ERISA. *See DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747–48 (6th Cir. 2010); *Little River Band of Ottawa Indians v. Blue Cross Blue Shield of Mich.*, 183 F. Supp. 3d 835, 844 (E.D. Mich. 2016). That is just what the Tribe has alleged. The Tribe asserts that BCBSM failed to preserve plan assets by consistently causing the Tribe to overpay on claims that were eligible for a lower, Medicare-Like Rate.

In holding that the Tribe failed to state a claim, the district court concluded that BCBSM had no fiduciary duty under ERISA to ensure payment of MLRs for eligible claims. An ERISA plan administrator's fiduciary duty does not extend, the court held, to comply with obligations extrinsic to the text of ERISA and the plan. The MLR regulation was just such an extrinsic obligation.

The cases that the district court relied on to support its conclusion that ERISA does not impose duties beyond those enumerated in the text of ERISA and the plan are inapposite. These cases concerned whether a violation of § 401(a) of the Internal Revenue Code ("IRC") provided a cause of action under ERISA. *See Clark v. Feder Semo & Bard, P.C.*, 739 F.3d 28 (D.C. Cir.

---

[4] Since we have held that only the Employee Policy is an ERISA plan, it is the assets of this policy that are at issue in this and the following section.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

2014); *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233 (10th Cir. 1999); *Reklau v. Merchs. Nat'l Corp.*, 808 F.2d 628 (7th Cir. 1986).[5]  The most analogous of these cases is *Clark*, in which the plaintiff contended that § 401(a)(4) of the IRC applied to ERISA through 29 U.S.C. § 1344(b)(5) and therefore that the defendant's violation of § 401(a)(4) amounted to a breach of its fiduciary duties under ERISA.[6]  739 F.3d at 29–30.  The D.C. Circuit held that neither Section 401(a)(4) nor 29 U.S.C. § 1344(b)(5) could be "the source of a duty [under ERISA] for a plan fiduciary." *Id.* at 30.  But unlike the plaintiff in *Clark*, the Tribe does not assert that the MLR regulations impose an *additional* duty on fiduciaries beyond what ERISA itself requires.  Instead, the Tribe bases its claim on the text of ERISA itself, which requires fiduciaries to act prudently and solely in the interest of the plan's participants and beneficiaries.  *See* 29 U.S.C. § 1104(a)(1).  The Tribe alleges that BCBSM violated these duties by paying more than necessary for the Tribe's medical claims by failing to take advantage of the MLR regulations.  That is enough to state a claim under ERISA.

BCBSM presents an alternative reason for affirming the district court's dismissal, arguing that its administration of the Tribe's plan simply is not subject to the MLR regulations.  These regulations, BCBSM contends, apply only to the expenditure of IHS funds and do not limit the payment that hospitals must accept from a third-party payor, such as BCBSM, which is not expending IHS funds.  Although BCBSM asserts that the Tribe's MLR claim therefore fails as a matter of law, BCBSM's argument is better understood as contending that the Tribe cannot show,

---

[5] On appeal, BCBSM draws our attention to *Bell v. Pfizer, Inc.*, 626 F.3d 66 (2d Cir. 2010), asserting that it provides further support for the district court's conclusion that BCBSM had no fiduciary duty under ERISA to secure payment of MLRs.  *Bell* is inapplicable.  The Second Circuit described Bell's suit as an attempt "to extend the ERISA fiduciary duty to unintentional misstatements regarding collateral, non-ERISA plan consequences of a retirement decision." *Id.* at 77.  That is not this case.

[6] 29 U.S.C. § 1344 is "a provision of ERISA that sets forth general rules governing the allocation of the assets of a retirement plan upon termination." *Clark*, 739 F.3d at 30.  Section 1344(b)(5) "authorizes the Secretary of the Treasury to step in and override an application of those general rules that would violate § 401(a)(4)" of the IRC. *Ibid.*

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

as a factual matter, that the regulations apply to its ERISA plan.  But since the Tribe has alleged that the BCBSM was aware of the MLR regulations, that BCBSM failed to ensure that the Tribe paid no more than MLR for MLR-eligible services, and that all other conditions precedent to the MLR claim were met, the Tribe has sufficiently pleaded that the MLR regulations are applicable to BCBSM's administration of the Tribe's ERISA plan.  We emphasize that we express no opinion on the ultimate merits of the Tribe's MLR claim, and we hold only that it would be premature to dismiss the Tribe's claim at this stage of the proceedings.

## THE PHYSICIAN GROUP INCENTIVE PROGRAM

The Tribe next appeals the district court's grant of summary judgment to BCBSM on the issue of whether BCBSM violated its fiduciary duties under ERISA through its operation of PGIP. The parties dispute whether BCBSM was acting as a fiduciary in operating PGIP, which is a threshold question "[i]n every case charging breach of ERISA fiduciary duty."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  We need not decide this question, however, because even assuming *arguendo* that BCBSM was a fiduciary, no rational trier of fact could find that BCBSM violated its fiduciary duties through PGIP.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Tribe contends that BCBSM violated the general duties that ERISA imposes on fiduciaries, *see* 29 U.S.C. § 1104(a)(1), as well as ERISA's prohibition against self-dealing, 29 U.S.C. § 1106(b)(1).  The Tribe posits that BCBSM's operation of PGIP is all but identical to its actions in *Hi-Lex* and *Pipefitters*, both of which concerned BCBSM's collection of marked-up fees from self-insured customers.  *See Hi-Lex*, 751 F.3d at 742 (breach of fiduciary duty for inflating hospital claims with hidden administrative fees); *Pipefitters*, 722 F.3d at 868 (breach of fiduciary duty for unilaterally setting and collecting fee from customer to meet financial obligation

-15-

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

BCBSM owed to State). In the instant case, the Tribe contends that BCBSM unilaterally and secretly marked up the Tribe's professional claims to cover the expenses of operating PGIP.

The record does not support the Tribe's claim. BCBSM developed PGIP to create financial incentives for physicians to improve patient care, which in turn would result in reduced healthcare costs for customers. Prior to the creation of PGIP in 2005, BCBSM paid all in-network physicians the amount to which they were entitled for the services that they provided to a plan participant. That was the end of the transaction. With the advent of PGIP, however, participating physicians agreed to permit BCBSM to deduct a small percentage of their payment and to have BCBSM place that money in a fund that consisted of deductions taken from similarly situated physicians. The money in this fund was then re-distributed to physicians who achieved certain performance objectives set by BCBSM, such as reducing the use of unnecessary procedures.

The Tribe's claim depends on its assertion that BCBSM charged it an additional fee to cover the costs of operating PGIP. To support its position, the Tribe first cites a statement that BCBSM made in a BCBSM-produced pamphlet called "The Record" that it sent to providers in June 2004. "Beginning July 1, 2004, physicians will receive an average 2 percent increase in the BCBSM maximum payment for most procedures. Also, an additional 0.5 percent increase in payments will be used to fund the Physician Group Incentive Payment Program that will be effective Jan. 1, 2005." Although the Tribe makes much of BCBSM's apparent admission that PGIP would be funded through an additional fee, it neglects to mention that the very next sentence of the pamphlet informs providers that "[d]etails will be communicated in a future issue of *The Record*."

Those details were clarified in an internal memo prepared by BCBSM in early January 2005. This memo, which noted that a letter with information about PGIP would be mailed that

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

week to self-insured customers such as the Tribe, explained that 0.5% of the 2004 fee update would be used to finance PGIP.[7]  BCBSM also explained that it would direct the stated amount into a fund, and that physicians would be paid the incentive from this fund.  BCBSM gave an example of how PGIP would work in practice:

- Services rendered – Approved amount with fee update is $100
                    – Approved amount with the added incentive is $100.50
- Provider will be paid $100
- 50 cents will be put in the incentive pool
- Member copay and EOB [Explanation of Benefits] will only show the $100

The Tribe insists that the memo "made clear that the 0.5 percent increase was an additional fee."

Not so.  First, the memo announced that the amount allocated to PGIP would come from the annual fee update, rather than get added on to it.  Indeed, the memo noted "that the additional 0.5 percent of the physician fee update is assessed regardless of whether or not the customers' members are treated by a physician" who participated in PGIP.  Second, the memo explained why the co-pay and EOB would not reflect the full amount that customers would pay.  BCBSM's claims-processing system was not then sophisticated enough to automatically deduct and set aside the applicable amount in the PGIP incentive pool.  Because of the limitations of BCBSM's claims-processing system in 2005, the letter explained—and deposition testimony made clear—that self-insured customers' bills that year would be reduced by an amount equivalent to the 0.5% that should have been deducted from physicians' payments and set aside in the pooled fund.  To make up for this reduction, customers would pay the aggregate amount to be allotted to PGIP in a single lump sum payment at the end of 2005 by having the money deducted from their annual refund check.  The Tribe does not dispute that its refund check for 2005 clearly indicated how much BCBSM deducted from it to offset the reduced rate that the Tribe had paid for healthcare that year

---

[7] Although the record is unclear whether any such letter was sent to customers, the Tribe has not argued that it never received this letter.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

as a result of the changes that BCBSM had made because of PGIP. The memo thus does not support the Tribe's assertion that it paid an additional fee because of PGIP in 2005.

Next, the Tribe claims that a 2007 internal email sent by a BCBSM underwriter shows that self-insured customers paid an extra fee because of PGIP.

> PGIP is an amount for physician incentive added into the amount due on the claim and as such should be charged to the group. These monies are pooled and are ultimately paid out only to those providers who participate in the program and meet certain requirements. Thus the PGIP amount on an individual claim would not be included in the amount paid to the provider (just like ASC access fee [i.e., the problematic fee in *Hi-Lex*] on the Local side is not part of the amount paid to the provider, but it is still the group's liability).

The underwriter has submitted a declaration explaining that she did not work directly on PGIP and had no personal knowledge about how the program operated. In any event, the email is not inconsistent with BCBSM's statements about how PGIP functioned.

Finally, the Tribe argues that since BCBSM acknowledged that it discussed PGIP at the same time that it considered how much to increase the annual fee update, the Tribe must have paid more because of PGIP. But the fact that BCBSM discussed PGIP and the fee update in tandem is unsurprising because BCBSM always has maintained that the PGIP pool is carved out of the fee update. Moreover, the Tribe's suggestion that it must have paid more because of PGIP since BCBSM talked about PGIP and the fee update at the same time is the type of speculative assertion that we have found to be insufficient to survive a motion for summary judgment. *See Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012).

In sum, the Tribe has not established that there is a genuine issue of material fact concerning whether BCBSM marked up the Tribe's professional claims with an additional fee because of PGIP. The record indicates that the only "mark up" that the Tribe was subjected to was

-18-

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

the result of the annual fee update,[8] and that the Tribe would have paid the same amount each year regardless of whether part of the fee update was earmarked to fund PGIP. Since the Tribe did not pay anything extra because of PGIP, summary judgment was appropriate.

## PREJUDGMENT INTEREST

Last, the Tribe argues that the district court erred in failing to award prejudgment interest as a component of its damages on its hidden-fees claim in connection with the Employee Policy. BCBSM asserts that the Tribe has forfeited any claim to prejudgment interest. We agree.

### *Standard of Review*

An award of prejudgment interest may be granted in the discretion of the district court in an ERISA action. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375–76 (6th Cir. 2015) (en banc). Accordingly, we review a district court's failure to award prejudgment interest for abuse of discretion. *Howe v. City of Akron*, 801 F.3d 718, 750 (6th Cir. 2015).

### *Analysis*

Although the Tribe sought prejudgment interest in its amended complaint and engaged in significant motions practice on the subject, it declined to request such interest in its motion for partial summary judgment, indicating that it would ask for interest at a later point in time. Not surprisingly, the district court's ruling on the parties' motions for summary judgment made no mention of prejudgment interest. After the district court's decision, and without ever filing a postjudgment motion concerning prejudgment interest, the Tribe lodged this appeal, contending that the district court erred in failing to award it prejudgment interest.

"[I]t is well settled law that this court will not consider an error or issue which could have been raised below but was not." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir.

---

[8] We note that the Tribe has not argued that the increased charges that result from the yearly fee update constitute a breach of fiduciary duty.

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

2005) (quoting *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1299 (6th Cir. 1992)).  Because the Tribe never gave the district court the opportunity to decide whether to award it prejudgment interest, it has failed to preserve that issue for appeal.

The Tribe's arguments to the contrary are unavailing.  The Tribe contends that although it made clear in its motion for partial summary judgment that it later would request prejudgment interest, the district court issued a final judgment before the Tribe had the opportunity to do so. Because the district court knew that prejudgment interest remained a live issue and prematurely entered judgment without considering it, the Tribe suggests that it could preserve its claim for interest simply by filing an appeal with this court.

The Tribe claims that *Howe* and *Rochow* support its position, but that is incorrect.  The litigation in *Howe* had endured for several years, resulting in two trials and several appeals. 801 F.3d at 724.  At the close of the first trial, the defendant moved for a new trial while the plaintiffs requested various forms of additional relief, including prejudgment interest, in a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment.  *Id.* at 727–28. The district court granted a new trial on the issue of damages, but it declined to rule on the plaintiffs' Rule 59(e) motion, informing the parties that it would take up plaintiffs' requests for additional relief at the second trial.  *Id.* at 729, 751.  When that trial came and went without a ruling on prejudgment interest, the plaintiffs, rather than filing yet another Rule 59(e) motion, appealed the district court's failure to include prejudgment interest in its damages award.  *Id.* at 750–51. We held that the plaintiffs had preserved their claim for interest because they had "consistently pursued prejudgment interest in the district court, and the district court led [them] to believe it would consider their request for prejudgment interest at the conclusion of the retrial, but did not do so."  *Ibid.*

-20-

No. 17-1932, *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*

In *Rochow*, we likewise concluded that the plaintiff had preserved his claim for prejudgment interest. There, the plaintiff requested prejudgment interest in his complaint and the parties fully briefed the issue prior to judgment, but the district court entered judgment without considering the plaintiff's entitlement to interest. 780 F.3d at 368–69, 376.

Hence, in *Howe* and *Rochow*, we had no trouble deciding that the plaintiffs preserved their claims for prejudgment interest for appeal because in both cases the parties had presented the question to the district court and the court simply had failed to rule on the matter. That is not what happened here. Although the Tribe asked for prejudgment interest in its complaint and filed numerous motions on the matter prior to summary judgment, the Tribe did not request interest in its motion for partial summary judgment or in any other dispositive motion. Consequently, the Tribe did not present the issue of its entitlement to prejudgment interest to the district court in a posture in which the court could decide whether the Tribe should receive such interest. The Tribe therefore has failed to preserve that issue. *See Schwab v. Huntington Nat'l Bank*, 516 F. App'x 545, 548 n.3 (6th Cir. 2013) ("[I]n order to preserve an issue for appellate review, generally it must be raised sufficiently for the trial court to rule on it.").

### III

For the foregoing reasons, we **REVERSE** and **REMAND** the district court's dismissal of the Tribe's MLR claim and **AFFIRM** the district court's judgment in all other respects.