UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE
OF MICHIGAN and
WELFARE BENEFIT PLAN,

        Plaintiffs,                  Case No. 1:16-cv-10317

v.                                       Honorable Thomas L. Ludington
                                             United States District Judge

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL AND DENYING DEFENDANT'S MOTION TO STRIKE WITNESS DISCLOSURE**

This matter is before this Court upon Plaintiffs' Motion to Compel and Defendant's Motion to Strike Plaintiffs' Supplemental Expert Witness Disclosure. Plaintiffs' Motion will be granted, and Defendant's Motion will be denied.

**I.**

In January 2016, Plaintiffs Saginaw Chippewa Indian Tribe of Michigan and its Welfare Benefit Plan sued Defendant Blue Cross Blue Shield of Michigan under federal and state law, alleging it failed to fulfill its fiduciary duties in administering the Plaintiffs' health-insurance plans.

Four years ago, the Sixth Circuit reversed this Court's dismissal of Plaintiffs' claims based on Defendant's alleged failure to insist on "Medicare-like rates" for care that was both authorized by Plaintiffs' Contract Health Services[1] program and provided to tribal members by

---

[1] The Consolidated Appropriation Act of 2014 renamed the Contract Health Services program "the Purchased/Referred Care program" (PRC). *See Purchased/Referred Care (PRC)*, INDIAN HEALTH SERVICE (June 2016), https://www.ihs.gov/newsroom/factsheets/purchasedreferredcare/ [https://perma.cc/NLK5-LH8U]. Yet throughout this litigation, all court level and the parties have used the terms "CHS" and "Contract Health Services." The same is true in this Order.

Medicare-participating hospitals. *Saginaw Chippewa Indian Tribe of Mich. v. BCBS of Mich.*, 200 F. Supp. 3d 697 (E.D. Mich. 2016), *vacated in part on recons.*, No. 16-CV-10317, 2016 WL 6276911 (E.D. Mich. Oct. 27, 2016), *rev'd in part*, 748 F. App'x 12 (6th Cir. 2018), *aff'g* No. 16-CV-10317, 2017 WL 3007074 (E.D. Mich. July 14, 2017).

On remand, this Court granted summary judgment for Defendant, concluding that Plaintiffs' payments for qualified CHS care through the Blue Cross plans were not eligible for Medicare-like rates. *Saginaw Chippewa Indian Tribe of Mich. v. BCBS of Mich.*, 477 F. Supp. 3d 598 (E.D. Mich. 2020). This Court interpreted the relevant federal regulations as limiting the requirement of Medicare-like rates to care that was authorized by CHS, provided to tribal members by Medicare-participating hospitals, and directly paid for with CHS funds. *Id.*

The Sixth Circuit reversed and remanded the case again, this time based on its interpretation of the applicable regulations. *Saginaw Chippewa Indian Tribe of Mich. v. BCBS of Mich.*, 32 F.4th 548 (6th Cir. 2022), *en banc reh'g denied*, No. 21-1226, 2022 WL 2286404, at *1 (6th Cir. June 7, 2022).

The parties have since engaged in months of substantial discovery and have repeatedly mentioned the possibility of settlement. *See* ECF Nos. 209–224. The instant motions are discovery disputes: one to compel discovery and one to strike a witness disclosure.

## II.

Plaintiffs have filed a motion to compel discovery. Under Federal Rules of Civil Procedure 26(e) and 37, they seek an order directing Defendant to supplement its prior disclosures with "(1) claims data production with the Health Insurance Claim Forms 1500s for the underlying healthcare claims at issue," (2) "the claims data fields identifying that the healthcare claims were referred/authorized by the Tribe's Contract Health Services Program," and (3) "the missing

invoices and reports" from "the invoices and reports Defendant issued to Plaintiff and previously produced in this case." ECF No. 225 at PageID.13314.

In contest, Defendant argues Plaintiffs' motion (1) is untimely and (2) seeks irrelevant information that (3) is not proportionate to the needs of the case. ECF No. 229 at PageID.13670.

"[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994). Generally, discovery entails all nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). This rule is "broadly read[] to encompass matters that might bear on[] or might lead to matters that could bear on 'any issue that is or may be in the case.'" *Knop v. Johnson*, No. G84-651, 1988 U.S. Dist. LEXIS 17974, at *2 (W.D. Mich. Mar. 23, 1988) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Simply put, evidence is discoverable if there is even a remote possibility that it is or could become relevant.

First, Defendant's timeliness argument is misplaced. Although true that discovery has ended, this Court granted the parties' stipulation to reopen discovery for limited purposes on August 2, 2022. *See* ECF No. 222. In that Order, Defendant consented to provide Plaintiffs with, among other things, (1) "the claims data relative to the Member Plan going back to July 2007, consistent with the claims data produced by [Defendant] in the *Grand Traverse Band* litigation," (2) "the Tribal Members that participated in the Employee Plan," and (3) "the claims data relative to those individuals, consistent with the claims data produced by [Defendant] in the *Grand Traverse Band* litigation." *Id.* at PageID.13297. Obviously, this placed a duty on Defendant to supplement those disclosures. *See* FED. R. CIV. P. 26(a)(1)(A)(ii), (e)(1)(A). And to the extent that it might not have, it will. *See* FED. R. CIV. P. 26(e)(1)(B) (requiring parties to "supplement or correct" disclosures "as ordered by the court").

Second, the information that Plaintiffs seek is relevant. Granted, Plaintiffs' motion sought Health Insurance Claim Form 1500s for the underlying healthcare claims at issue. But Defendant has since clarified that the forms that Plaintiffs intended to seek are "UB-04 Forms." *See* ECF No. 229 at PageID.13681. Although Defendant adds that UB-04s are not relevant because "nothing on Form UB-04 actually evidences 'authorization,'" *id.*, that is incorrect. If the Tribe referred or authorized the claimed care, then the UB-04s would identify "the Tribe's Nimkee Contract Health Program" in Box 38 as the "Responsible Party," in Box 50 with Defendant as the "Payer," and in Box 80 as the "authorized agent"—and the UB-40s[2] have a designated blank for "Treatment Authorization Codes."[3] ECF No. 231 at PageID.13855; *see, e.g.*, ECF No. 231-5 at PageID.13876–81. Although correlation does not equal causation, it is more likely than not that this consistent use of the forms and explanation of what treatment if any was "authorized" demonstrates "the healthcare claims [that] were referred/authorized by the Tribe's Contract Health Services Program," which Defendant stipulated to provide to Plaintiffs. ECF No. 225 at PageID.13314.

And the documents sought are proportionate to the needs of the case. For one, producing all the UB-04s for the Saginaw Chippewa Indian Tribe during the relevant time would be proportionate because Defendant has already stipulated to disclose them, they are within

---

[2] A UB-04 Form is "a universally accepted billing form for services rendered by [healthcare] facilities." *Malibu Behav. Health Servs. Inc. v. Magellan Healthcare, Inc.*, No. 220CV1731ODWPVCX, 2021 WL 2457155, at *2 (C.D. Cal. June 16, 2021). It is how the facility bills the insurer. Yet, UB-40s are not the exclusive mechanism by which insurers may approve or deny coverage. *See Stanford Health Care v. USAble Mut. Ins.*, 548 F. Supp. 3d 909, 915 (N.D. Cal. 2021).

[3] The Treatment Authorization Codes are "[a] number or other indicator that designates that the treatment covered by this bill has been authorized by the payer indicated in [Box] 50 on lines A, B, and C." *UF-04 Instructions and Sample Claim Form*, SECURITYHEALTHPLAN (Sept. 15, 2021), https://www.securityhealth.org/providers/provider-manual/shared-content/claims-processing-policies-and-procedures/ub-04-instructions-and-sample-claim-form?claims-processing-policies-and-procedures-group--direct-pay [].

Defendant's possession, and it would not be overly burdensome for Defendant to produce them, which it has already done for numerous other documents specific to the people involved here. Moreover, Plaintiffs offered to "avoid the production of gobs of documents (e.g.[,] the [UB-04]s) by finding representative examples and stipulating that similar documents would exist as to all relevant transactions," or whatever "could save time and money by streamlining the discovery process and trial." ECF No. 231-3 at PageID.13871. And Defendant has advanced no argument for why producing the UB-04s for be unduly burdensome.

For these reasons, Plaintiffs' Motion to Compel will be granted. Defendant will be directed to produce all UB-04s related to this case and the invoices and reports that it agreed to produce.

### III.

Defendant has filed a motion to strike a supplemental witness disclosure that Plaintiffs provided on June 20, 2022. *See generally* ECF No. 226. Defendant argues the disclosure should be stricken because (1) Plaintiffs did not seek leave to file it, (2) it surprises Defendant, (3) responding to it would require significant expense, (4) it would disrupt the timeline for trial, and (5) Plaintiffs have not justifiably explained the timeliness of the disclosure. *Id.* at PageID.13389.

Good cause is required to substitute an expert witness after discovery ends. *Whiteside v. State Farm Fire & Cas. Co.*, No. 11-10091, 2011 WL 5084981, at *1 (E.D. Mich. Oct. 26, 2011). "Courts have looked to both Rule 16(b)(4) and Rule 37(c) when deciding whether to allow a party to substitute an expert witness when the first expert becomes unavailable." *Gaines v. Cnty. of Wayne*, No. 20-11186, 2021 WL 5997980, at *1 (E.D. Mich. Dec. 20, 2021). To that end, the court should consider the "moving party's diligence," "possible prejudice" to the nonmoving part, and whether the moving party offered a "reasonable explanation." *Id.* at *2; *accord Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015).

The only real issue is that Plaintiffs did not request leave to substitute their witnesses. In a related case involving the same issues, the same counsel, and the same Defendant, the parties stipulated to permit "an additional expert in light of the inability of Plaintiffs' current expert to analyze claims more than seven years old." *Grand Traverse Band of Ottawa and Chippewa Indians v. BCBS of Mich.*, No. 5:14-CV-11349 (E.D. Mich. Apr. 27, 2021), ECF No. 144 at PageID.3514. Two days later, those plaintiffs replaced their prior expert witness with the same two expert witnesses at issue here. *See* ECF No. 228-8 at PageID.13647–48. In this way, Defendant's arguments about surprise, expense, and explanation fail. And Defendant's trial-timeline argument fails, as there is no trial scheduled and the parties have been working to settle the case.

Plaintiffs' witness substitution is justified and harmless. Plaintiffs seemingly expected Defendant to permit them to use the same firm to calculate damages in this case that Defendant permitted another Native American Tribe to use in another case mere month ago. One of the "principal concerns" in "the world of discovery . . . seems to be data management." Zakary A. Drabczyk, Note, *Share with Caution: The Dangers Behind Sharing Orders*, 65 WAYNE L. REV. 401, 402 (2020). So Defendant has unsurprisingly contested Plaintiffs' request. However, as explained above, there has been new discovery taking place, the parties are trying to settle, which will require complex mathematical computations, and Plaintiffs' current expert has cut ties with the case after extreme delay due in part to appeals. If Plaintiffs have no expert to assist the parties in analyzing the claims data, then that would severely impede the parties' settlement efforts and the merits of the case, as damages are obviously critical to Plaintiffs' claims. In sum, Plaintiffs have provided good cause to sub in a new expert witness.

For these reasons, Defendant's Motion to Strike will be denied.

- 7 -

## IV.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Compel, ECF No. 225, is **GRANTED**.

Further, it is **ORDERED** that Defendant is **DIRECTED** to provide Plaintiffs with all UB-04 Forms that relate to the claims at issue, as well as the missing invoices and reports that it failed to provide, **on or before November 28, 2022**.

Further, it is **ORDERED** that Plaintiffs are **GRANTED** leave to substitute Lynda Myrick and Dawn Cornelis in place of Natalyn Gardner.

Further, it is **ORDERED** that the parties are **DIRECTED** to complete expert discovery with respect to Lynda Myrick and Dawn Cornelis on or before **February 13, 2023**.

Further, it is **ORDERED** that Defendant's Motion to Strike, ECF No. 226, is **DENIED AS MOOT**.

Dated: November 14, 2022            s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge